**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF MISSISSIPPI**
**SOUTHERN DIVISION**

**THE LAMAR COMPANY**                                    **PLAINTIFF**

**v.**                                    **CIVIL ACTION NO. 1:17cv149 LG RHW**

**THE MISSISSIPPI TRANSPORTATION**
**COMMISSION**                                    **DEFENDANT**

---

**MEMORANDUM IN SUPPORT OF THE LAMAR COMPANY'S**
**MOTION FOR PARTIAL SUMMARY JUDGMENT**

---

  **COMES NOW,** The Lamar Company ("Lamar") and files this, its Memorandum in

Support of Its Motion for Partial Summary Judgment and in support thereof would show unto to

the Court the following:

<u>**SUMMARY OF LAMAR'S MOTION**</u>

  This case brings to the Court a request for it to construe and determine the legislative intent

of a clearly ambiguous Mississippi Code Section 49-23-9(2)(b).

  This section, adopted in the 2008 session of the Mississippi Legislature, purports to govern

the permissible height of outdoor sign structures in the State of Mississippi.  However, through

legislative error, the section contains two diametrically contradictory sentences.  In one sentence,

there is a blanket prohibition against **any** signs exceeding forty (40) feet in height.  The very next

sentence, however, expressly limits that height restriction to only those sign structures erected

before April 15, 2008.  What one sentence gives, the other takes away.  The two sentences cannot

be reconciled.  It is undisputable that § 49-23-9(2)(b) is ambiguous.

  Similarly, The Mississippi Department of Transportation ("MDOT's") own internal Rules

implementing this statute, adopted the identical conflicting and irreconcilable language in Rule

1827310

1000(1)(b) and (c).  Subsection (b) limited all signs to forty (40) feet in height while the very next sentence in subsection (c) allows any sign erected prior to April 15, 2008 to exceed forty (40) feet in height.

As set forth more fully in the undisputed facts below, the forty (40) foot height limitation had been established by amendment to § 49-23-9 in 2003.  Because this limitation effectively rendered 60-70% of the outdoor signs in Mississippi "non-conforming" and subject to removal upon the slightest damage, the outdoor industry sought an amendment in 2008 to limit the height restriction to only new signs erected after 2008.  Under the sponsorship of then Senator Billy Hewes of Gulfport, an amendment was introduced, passed and signed by the Governor, which limited the height restriction to only those signs erected after its effective date, or April 15, 2008.

Unfortunately, as confirmed by Senator Hewes in his affidavit, the blanket prohibitory language that was intended to be deleted, was not.  The resulting statute is patently ambiguous.

Under well-settled authorities, once this Court determines that a statute is ambiguous, it may proceed to determine the true legislative intent, which Lamar contends is the April 15, 2008 limited height restriction.

Of course, this Court may also look to an agency's interpretation of relevant statutes as a guide to its decision.  In the instant case, the proof is undisputed that, until Lamar attempted to modify the particular structure which brought on this dispute, MDOT had consistently interpreted the statute as Lamar contends in this case.  To further reinforce MDOT's interpretation, it previously worked with Lamar to jointly draft proposed legislation intended to eliminate the ambiguity.

Lamar seeks this Court's declaratory judgment finding § 49-23-9 and Rule 1000 are ambiguous and holding that the clear legislative intent is that only those sign structures erected after April 15, 2008 are limited to forty (40) feet in height.

## PROCEDURAL HISTORY

This action was filed by Lamar on April 4, 2017.

On its face, the Complaint asserts causes of action for declaratory relief as to the proper interpretation of § 49-23-9(2)(6) of the Mississippi Code and Rule 1000(1)(c) of the MDOT rules and, alternatively for inverse condemnation of Lamar's many sign structures should the Court deny the relief it requested. It also sought declaratory relief as to the invalidity of Section 1800 of MDOT's rules.

At the case management conference with Magistrate Judge Walker, both parties agreed that Count I of the Complaint, the interpretation of § 49-23-9(2)(b) and Rule 1000(1)(c) would be placed before the Court by way of motions. Therefore, only a limited case management order was entered setting forth discovery and motions deadline for that portion of the case. *See Docket Text dated June 29, 2017.* That order was amended at the request of the parties by docket text order dated November 7, 2017. *See Docket Text dated November 7, 2017.*

Pursuant to that Order, Lamar has now filed its Motion for Partial Summary Judgment.

## UNDISPUTED FACTS

### A.    The Lamar Company, LLC

The Lamar Company, LLC ("Lamar") is in the businesses of erecting and maintaining outdoor advertising structures on a nationwide basis. In most cases, Lamar enters into a long-term ground lease with the owner of real property upon which it erects the sign structure. Lamar then sells advertising space on the sign structure to its customers.

The genesis of this dispute involves a sign structure owned by Lamar and located in the City of Gulfport, Mississippi.  Charlie Furman is the Vice-President of Lamar in charge of the region that includes Gulfport.

### B.      The Regulation Of Outdoor Advertising

In 1977, the Mississippi Legislature adopted Sections 49-23-1 through 49-23-29 to regulate the size, location and other matters relating to outdoor advertising.  Sections 49-23-7 and 49-23-9 of that chapter also authorized the Mississippi Transportation Commission, acting through MDOT, to adopt implementing regulations.  Pursuant to this authority, MDOT adopted and has from time to time amended implementing rules.  These are found in Chapter 09002 <u>Control of Outdoor Advertising Adjacent to State Controlled Routes</u>, Sections 100 to 1900.

### 1.      "Conforming" Versus "Non-Conforming"

Important regulations for this case are Rules 306 and 328.   These two sections define what is a "conforming" sign and what is a "non-conforming" sign.  Section 306 defines a "conforming" sign:

> <u>Conforming Signs:</u>  A sign that conforms to the requirements under this rule, the applicable state statutes, the state-federal agreement, federal statutes and federal regulations.

Section 328, defines a "non-conforming" sign as:

> <u>Non-Conforming Signs:</u>   A sign that was legally erected under the law and circumstances then and there existing that fails to conform to the requirements of this Rule because of subsequent changes to the law or the circumstances.

More importantly, the Rules define what modifications can and cannot be made to a sign structure based upon whether it is classified as a "conforming" or "non-conforming" sign.  For a sign classified as "conforming" there are very few, if any, restrictions placed on modifications or repairs.  Section 1302 provides in pertinent part:

In addition to the requirements set out in Section 1301, conforming signs shall also be subject to the following:

1. After a sign has been erected in conformity with the permit requirements. Additional faces or lighting may be added or the sign may be increased in size without obtaining permit, provided the sign owner submits a written request to the State Maintenance Engineer. The written request shall identify the sign by the Department permit number and give details of proposed changes. The sign shall at all times conform to the standards contained in Section 1300 of this Rule.

However, for a sign classified as "non-conforming," Section 1304's restrictions are severe and allow very little, if any, modifications and no repairs to be made.

In addition to the requirements set out in Section 1301 above, non-conforming signs shall be maintained in accordance with the following:

No repair or maintenance will be allowed on non-conforming signs except customary maintenance or repair defined herein. The following activities are considered customary maintenance and repair.

a. Change of advertising message or copy.

b. Slight alterations of the dimensions of painted bulletins incidental to copy change which do not substantially increase the overall dimensions of the advertising copy portions of the sign.

c. Slight alterations of the dimensions of painted bulletins incidental to copy change which do not substantially increase the overall dimensions of the advertising copy portion of the sign.

d. Any net decrease in the outside dimensions of the advertising copy portion of the sign will be permitted. Any subsequent change in the outside dimensions of the sign will be permitted so long as it does not exceed the actual dimensions owner records indicate existed on March 6, 1972. However, in no case will legal size limitations be exceeded.

e. The placing of night time illumination on existing sign structures us specifically prohibited as customary maintenance; however, such illumination may be permanently removed from such sign structure.

f. A nonconforming sign that is damaged but not destroyed as defined in Section 336(7) is still subject to the restrictions on repair and maintenance set out herein.

5

> Such a sign that does not receive damage sufficient to render it destroyed may only be repaired to the extent that it is damaged. Undamaged portions of the sign may not be repaired or replaced.

Thus, to the owner of a sign structure, whether or not MDOT classifies the structure as "conforming" or "non-conforming" may mean the difference as to whether the structure may be modified or repaired if damaged. Obviously, a sign structure that cannot be modified or repaired has less value.

### C.    Sign Structure 5821

The sign structure in question bears MDOT Permit No. 5821 and will be described herein by that number.

As can be seen by Exhibit A (Furman Affidavit) and Exhibit 1 thereto, #5821 is a vertical sign which is a unique shape. *Exhibit B (Furman Depo.) p. 17-22.* The sign is approximately sixty-five (65) feet in height. *Id.* The sign's unique shape and location caused Lamar difficulties in selling space on it. *Id.* Advertisers often buy advertising on signs in bulk and standard shapes make it easier for the advertiser to buy the advertising materials. *Id.*

Sign 5821 was erected and received a valid permit from MDOT in 1986.[1] *Exhibit C (Patterson Depo.) p. 36 and Exhibit 9 thereto.* The owner of the sign at that time was Headrick Outdoor. *Id.* Lamar purchased Sign #5821 in 1997. *Exhibit B (Furman Depo.) p. 23.*

### D.    The Proposed Modifications To Sign #5821

On May 22, 2015, Lamar officials wrote MDOT and advised it that they intended to modify sign #5821 to reduce its height from sixty-two (62) feet to forty-five (45) feet and to change its

---

[1] The sign also received and has maintained a permit from the City of Gulfport. The City has agreed to the modifications Lamar intended to make and that permit is not in issue.

shape.  The correspondence did not seek MDOT's permission to make the changes, but only to give notice of the changes.  *See attached Exhibit A (Furman Affidavit) and Exhibit 1 thereto.*

On June 2, 2015, Lamar was surprised to receive a letter from Kelly Hammons, MDOT District Permit Officer claiming that sign #5821 could not be modified as Lamar proposed because it was "non-conforming."  According to Hammons, sign #5821 was non-conforming because it exceeded forty (40) feet (it was sixty-two (62) feet) and would still exceed the forty (40) feet limitation after the modification.  *See Exhibit A (Furman Affidavit) and Exhibit 2 thereto.*

Lamar was surprised by this letter for two reasons.  First, the letter quoted verbatim from Section 1000(c) of the MDOT regulations which specifically and expressly provided that signs that were over forty (40) feet in height, but erected before April 15, 2008 were "conforming." MDOT's corporate representative, Heath Patterson, admitted in his deposition that MDOT never checked to see when #5821 was erected, even though it had those records.  *Exhibit C (Patterson Depo.)  p. 36 and Exhibit 9 thereto.*  Second, MDOT's own long standing interpretation of both the implementing statutes, particularly §§ 49-23-9(2)(b) and 1000(1)(b) was that sign structures in excess of forty (40) feet that were in existence on April 15, 2008 were "conforming" and could be modified as Lamar had proposed.  *See Exhibit B (Furman Depo.)  pp. 12-17 and Section D.2. in Argument below.*

On June 10, 2015, counsel for Lamar wrote to Hammons and explained the above and asked him to reconsider MDOT's position.  *See Exhibit A (Furman Affidavit) and Exhibit 3 thereto.* MDOT never responded to this correspondence or offered any further explanation for their position.  *Exhibit C (Patterson Depo.) p. 36.*

E.      **The Proposed Joint Revisions To Section 49-23-9**

Over the next six months, Lamar and MDOT communicated over their varying positions

as to whether Sign #5821 was "conforming" or "non-conforming."   Much of this discussion

centered on the language of § 49-23-9(2)(b) which provides:

> The height of any sign structure shall not exceed forty (40)
> feet.  **The height of sign structures erected on or after
> April 15, 2008, shall not exceed forty (40) feet above the
> level of the road grade** unless the grade of the land adjacent
> to the road is higher than the level of the road grade but shall
> not exceed forty (40) feet above the grade of the site where
> the sign is placed. (Emphasis added)

Based on this section, MDOT adopted Rule 1000(1)(b) and (c) which followed § 49-23-

9(2)(b) verbatim and provided:

> 1000    The following standards or requirements apply to all
> signs erected under permits issued through this Rule. These
> standards are subject to the standards set out in § 49-23-1, et
> seq., Mississippi Code of 1972 and shall conform to any
> amendments thereto from and after the adoption of this Rule.
> 1.       Maximum Size and Height
>                                    …
> b.       The height of any sign structure shall not exceed
>          forty (40) feet.
> c.       **For sign structures on or after April 15, 2008,
>          the height of any sign structure shall not exceed
>          forty (40) feet above the level of the road grade**
>          unless the grade of the land adjacent to the road is
>          higher than the level of the road grade, then the
>          height of the sign structure may exceed forty (40)
>          feet above the level of the road grade…(Emphasis
>          added)

Lamar contended that the proper reading of both the statute and the regulation was that any

sign structure which exceed forty (40) feet in height, but which were erected **before** April 15, 2008

was legal and "conforming."  *Id.*   MDOT, on the other hand, chose to ignore the second sentence

of both the code section and the rule and contended that **any** sign structure which exceeded forty (40) feet in height, **no matter when erected** was illegal and non-conforming.

In fact, representatives of Lamar and MDOT (McConnell, Chief Engineer; Dean, Chief Permit Officer and Patterson, State Maintenance Engineer) met to specifically discuss how to resolve their differing interpretations of the code section and the rule.    While MDOT acknowledged the ambiguity created by the conflicting sentences, MDOT wanted the parties to jointly go to the legislature to clarify the language.   The parties agreed to jointly draft legislation clarifying what both parties agreed to be the intent of the legislature in enacting § 49-23-9(2)(b). *See Exhibit D (Elrod Depo.)  p. 13.*

Pursuant to these discussions, on January 14, 2016, counsel for Lamar forwarded to Heath Patterson, MDOT's State Maintenance Engineer, a proposed draft revision to § 49-23-9 which eliminated the sentence "The height of any sign structure shall not exceed forty (40) feet."  It also made clear that any signs erected before April 15, 2008 could exceed forty (40) feet and would be a "conforming sign" as to height.  *See Exhibit C (Patterson Depo.) and Exhibit 16 thereto.*

On February 3, 2016, Patterson responded with MDOT's own proposed revision and clarification.   As seen by Exhibit C (Patterson Depo.) and Exhibit 16 thereto, MDOT's counterproposal was virtually identical to Lamar's proposal.  It, like Lamar's, eliminated the across the board forty (40) foot height limitation.  It also acknowledged that any signs which were erected prior to April 15, 2008 would be legal and "conforming."  *Id.*

In both 2015 and 2016, bills amending § 49-23-9 following MDOT's proposed language were introduced in the Mississippi Legislature.  *Exhibit E (Elrod Affidavit) and Exhibits 1 and 2 thereto.*   On both occasions, the bills were killed in the House Transportation Committee by

Lamar's competitors who saw the proposal amendments as "a Lamar bill." *Exhibit D (Elrod Depo.) pp. 14-18.* MDOT did not oppose either bill. *Exhibit C (Patterson Depo.) pp. 64-65.*

On April 4, 2017, Lamar filed this Complaint seeking this Court's construction of § 49-23-9(2)(b) and Rule 1000(c).

### F.     The Legislative History Of Section 49-23-9

The original version of § 49-23-9 provided for no limitations on the height of sign structures. *See Exhibit F.* Many of the now existing forty (40) plus foot signs were erected by the industry during this time. *Exhibit D (Elrod Depo.) pp. 19-21 and Exhibit I (Hewes Affidavit).* However, in 2003, § 49-23-9 was amended to include, for the first time, an across the board limitation of forty (40) feet in height for all sign structures. *See Exhibit G.* This limitation effectively made 60-70% of the outdoor industry's inventory of signs, *i.e.* those exceeding forty (40) feet in height, non-conforming and thus, subject to the severe limitations on repairs and modifications. *Exhibit D (Elrod Depo.) pp. 19-21 and Exhibit I (Hewes Affidavit).*

Prior to the 2008 legislative session, representatives of the Mississippi Outdoor Advertising Association met with Senator Billy Hewes of Gulfport. Senator Hewes was, at the time, President Pro Tem of the Mississippi Senate and a member of the Highways and Transportation Committee of the Senate. The outdoor industry representatives told Senator Hewes of the severe adverse consequences and loss of investment the forty (40) foot height limitation had on the industry. *Exhibit D (Elrod Depo.) pp. 19-21 and Exhibit I (Hewes Affidavit).* While Hewes wished to ultimately keep the forty (40) foot height limitation for all newly constructed signs, he recognized the economic hardship it placed as to existing signs. He agreed to sponsor an amendment to § 49-23-9 to provide that forty (40) foot plus signs in existence on the date of the passage of the amendment could exceed forty (40) feet, but that all signs erected after that date were to be limited

to forty (40) feet.  *Id.* That proposed compromise was introduced by Senator Hewes on February 19, 2008 as Senate Bill 2955.  *Exhibit I (Hewes Affidavit).*

Senate Bill 2955 was passed by the legislature on April 15, 2008 and signed by the Governor on May 8, 2008.  *See Exhibit H.*

The Affidavit of Billy Hewes *(Exhibit I)*, confirms that it was the intent of Senate Bill 2955 that signs in existence or erected on or before April 15, 2008 and that exceeded forty (40) feet in height could remain as conforming signs.  However, any new signs erected after that date could not exceed forty (40) feet.

However, according to Hewes' Affidavit, the sentence in § 49-23-9(2)(b) which reads "The height of any sign structure shall not exceed forty (40) feet" should have been deleted from § 49-23-9(2)(b), but was not.  According to Hewes, that sentence was and is inconsistent with the next sentence which allows sign structures erected on or before April 15, 2008 to remain legal and conforming.  That second sentence expresses the true intent of Senate Bill 2955 as passed by the Legislature.  *Id.*

## ARGUMENT

### A.    The Standard for Summary Judgment

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). "The party moving for summary judgment bears the initial burden of 'informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact'." *Washburn v. Harvey*, 504 F.3d 505, 508 (5th Cir. 2007) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). Once such a showing is made, the burden then shifts to the non-movant to "go beyond the pleadings and

by . . . affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Celotex Corp.,* 477 U.S. at 324 (quoting FED. R. CIV. P. 56(c), 56(e)).

### B.      This Court's Duty In Statutory Interpretation Cases

Under Mississippi law,[2] when considering the meaning of a statute "the first question a court should decide is whether the statute is ambiguous." *Mississippi Dep't of Transp. v. Allred*, 928 So. 2d 152, 154 (Miss. 2006) (quoting *City of Natchez v. Sullivan*, 612 So. 2d 1087, 1089 (Miss. 1992)). The court does not look beyond the plain text of a statute "if a statute is plain and unambiguous." *Tipton v. State*, 150 So. 3d 82, 84 (Miss. 2014) (citations omitted). "However, statutory interpretation is appropriate if a statute is ambiguous or is silent on a specific issue." *Id.* (citation omitted). "The ultimate goal of the Court is to determine legislative intent." *Id.* "[I]f a statute is ambiguous, the Court must 'carefully review statutory language and apply its most reasonable interpretation and meaning to the facts of a particular case'." *Id.* (quoting *Caldwell v. N. Miss. Med. Ctr.,* 956 So. 2d 888, 891 (¶ 10) (Miss. 2007)). "In establishing the meaning of an ambiguous statute, this Court also may look to the historical background, its subject matter, and the purposes and objects to be accomplished." *Id.* (citation omitted).

The Mississippi Supreme Court has said that when considering an ambiguous statute, "[t]he polestar consideration for this Court is legislative intent." *Mississippi Gaming Comm'n v. Imperial Palace of Mississippi, Inc.*, 751 So. 2d 1025, 1028 (Miss. 1999). The Court went on to explain:

> Legislative intent as an aid to statutory construction, although often elusive to the unaided vision, remains nevertheless the pole star of guidance. . . . We are not to construe clarity out of obscurity but **intent out of inconsistency**. . . . **It is**

---

[2] MTC removed this matter asserting that this Court had federal question jurisdiction. However, the interpretation of the Mississippi statute at issue here (Miss. Code Ann. § 49-23-9(2)(b)) is a state-law question over which this court has supplemental jurisdiction pursuant to 28 U.S.C. §1367. Therefore, Mississippi law applies to this issue.

> **our duty to support a construction which would purge the legislative purpose
> of any invalidity, absurdity or unjust inequality.**

*Id.* (quoting *City of Jackson v. Lakeland Lounge of Jackson, Inc.,* 688 So. 2d 742, 747 (Miss. 1996)) (emphasis added).

The Mississippi Court of Appeals has held that "[w]hen there is confusion, one accepted means to gain perspective is 'by a consideration of the old law, the mischief [that had arisen under that law,] and the remedy' that was chosen to ameliorate it." *Dawson v. Townsend & Sons, Inc.,* 735 So. 2d 1131, 1137 (Miss. Ct. App. 1999) (quoting *Parchman v. Mobile & Ohio R. Co.,* 109 So. 665, 667 (Miss. 1926) (concurring opinion)). In that case, the Court noted:

> The best available sources for the information here are the external context of the
> pre-existing statutes and the defects in them that were recognized as requiring a
> remedy, the drafting context of the language of the bill as it went through various
> transformations into a final enactment, and the internal context of the final statutory
> language itself.

*Id.*

### C.   Section 49-23-9(2)(b) Is Ambiguous and Statutory Interpretation Is Appropriate

Section 49-23-9(2)(b) is patently ambiguous. Merriam-Webster defines "ambiguous" as: "doubtful or uncertain especially from obscurity or indistinctness" and "capable of being understood in two or more possible senses or ways."

Prior to 2008, the relevant portion of the statute at-issue in this case read: "The height of any sign structure shall not exceed forty (40) feet.  In 2008, the statute was amended to "to limit this height limitation to only those signs erected after April 15, 2008" but, the prohibitory language was not removed. Miss. Code Ann. § 49-23-9(2)(b) (2002, as amended).

> The height of any sign structure shall not exceed forty (40) feet. <u>The height of sign
> structures erected on or after April 15, 2008, shall not exceed forty (40) feet above
> the level of the road grade unless the grade of the land adjacent to the road is higher
> than the level of the road grade, then the height of the sign structure may exceed</u>

> forty (40) feet above the level of the road grade but shall not exceed forty (40) feet
> above the grade of the site where the sign is placed.

*Id.* at § 49-23-9(2)(b) (underlined language added by amendment).

Thus, one sentence of § 49-23-9(2)(b) states that the 40-feet limitation is applicable to all signs, but the very next sentence states that it applies only to sign structures erected on or after April 15, 2008. For signs erected before April 15, 2008, the first sentence suggests that the 40-feet limitation applies whereas the second next sentence states that the 40-feet limitation does not apply. This ambiguity cannot be reconciled by the plain language of the statute.

Further, the "rule against surplusage" is a canon of statutory interpretation that is applicable here. The United States Supreme Court explained that "the canon against surplusage is strongest when an interpretation would render superfluous another part of the same statutory scheme." *Marx v. Gen. Revenue Corp.*, 568 U.S. 371, 386 (2013) (citation omitted). In this case, MDOT's interpretation would give force to the first sentence – "The height of any sign structure shall not exceed forty (40) feet" – but would render the first part of the second sentence – "The height of sign structures erected on or after April 15, 2008, shall not exceed forty (40) feet" – superfluous. Therefore, MTC's position would violate the rule against surplusage.

**D.    Section 49-23-9(2)(b) Should Be Construed To Limit Only Signs Erected After April 15, 2008 To Forty (40) Feet In Height**

**1.    The Legislative Intent in Enacting Senate Bill 2955**

As noted, once this Court determines, as it must, that there is an ambiguity in § 49-23-9(2)(b), it must then move to determine the true legislative intent in enacting the amendment that became the current version of that statute.

Prior to 2004, § 49-23-9 contained no height limitation. *See Exhibit G*. However, by amendment passed during the 2003 Session, a blanket prohibition against any outdoor sign structure exceeding forty (40) feet in height was added. *See Exhibit G*.

However, the outdoor industry had constructed signs exceeding the forty (40) feet based upon there being no such limitation.  This represented a considerable investment.  By enacting that limitation in 2003, as much as 60%-70% of the industry's inventory had been immediately rendered "non-conforming."  As explained above, that classification severely limited the repairs that could be made to the sign structures and absolutely prohibited any modifications or reconstruction should they be damaged.

After meeting with industry officials, Senator Hewes agreed to have drafted and to sponsor what eventually became SB 2955. According to Hewes, the intent of SB 2955 was to implement his compromise agreement with the outdoor industry and to allow signs exceeding forty (40) feet in height, erected prior to the effective date of that Act, to continue as "conforming" signs, but to prohibit any sign from exceeding that height after the Act's effective date, or April 15, 2008.  *See Exhibit I (Hewes Affidavit)*. The bill as passed and signed by the Governor clearly states that.

However, just as important as what SB 2955 did, is what it failed to do.  As Hewes clearly, and undisputedly states in his Affidavit:

> It was the intent of Senate Bill 2955 to enact the compromise agreement I had worked out with the outdoor advertising industry, that signs in existence (or erected) on or before April 15, 2008 that exceeded forty feet in height could remain as "conforming" signs.  However, any new signs erected after that date could not exceed forty feet in height.

> I have reviewed the final enacted version of Senate Bill 2955.  The sentence of 49-23-9(2)(b) which reads "The height of any sign structure shall not exceed forty (40) feet" should have been deleted from 49-23-9(2)(b); however, it was not.  That sentence is inconsistent with the next sentence which allows sign structures erected on or before April 15, 2008 to remain legal and conforming.  The second sentence expresses the true intent of Senate Bill 2955, as passed by the Legislature.

*Exhibit I (Hewes Affidavit).*

That the Hewes Affidavit accurately describes what occurred, or did not occur, with SB 2955 is apparent from its face.  § 49-23-9, as it existed prior to passage of SB 2955, prohibited **any** signs from exceeding forty (40) feet.  However, the change implemented by SB 2955 was to limit that height restriction to only those signs erected prior to April 15, 2008.  It does not take a major effort at statutory construction to see that the intent of SB-2955 was to place the April 15, 2008 limitation on the height restriction and that the failure to remove the across the board prohibition was simply a clerical error.

Thus, it was clearly the intent of the Mississippi legislature in 2008 to allow all existing sign structures which exceeded forty (40) feet in height but which were erected on or before April 15, 2008, to remain and be "conforming".  Only those structures erected after April 15, 2008 are limited by the forty (40) foot height limitation.

### 2. MDOT's Own Interpretation Supports Lamar's Position

As noted above, the plain language of § 49-23-9(2)(b) is ambiguous on its face. The undisputed facts of the instant case confirms that MDOT has historically resolved this ambiguity by consistently interpreting § 49-23-9(2)(b) and Section 1000(c) of its own internal regulations as allowing signs exceeding forty (40) feet in height to be classified as conforming.  MDOT has consistently, at least until Lamar proposed modifying sign #5821, allowed substantial modifications and major repairs to forty (40) plus foot signs; something that could not be done if the signs were classified as "non-conforming."

As noted by Lamar's Gulfport VP, Charlie Furman, MDOT has allowed, without objection, numerous modifications of forty (40) plus foot signs.  *See Exhibit A (Furman Affidavit) and Exhibit B (Furman Depo.) pp.12-17.*  Most tellingly, after Hurricane Katrina caused substantial damage to

16

Lamar signs along Interstate 10, some of which were 100 feet in height, MDOT allowed repairs and even full reconstruction of the signs without objection or even permits. *Id.*

Furman identified other instances where MDOT allowed substantial modifications to forty (40) plus foot signs without objection. *Id.* In one instance, in 2013, Lamar actually applied for a permit to substantially modify a forty-five (45) foot sign and that permit was approved in writing by MDOT. *Exhibit B (Furman Depo.) pp. 15-17.*

In his deposition, MDOT's Patterson confirmed that he was aware of at least one other instance where MDOT had approved a modification of a sign that exceeded forty (40) feet. *Exhibit C (Patterson Depo.) p. 65.* Importantly, Patterson could not identify any specific instances where it had objected to or attempted to prevent modifications to forty (40) plus foot signs. *Id. at p. 66.*

Most telling however, were the actions of MDOT after the issue with Sign #5821 arose. According to the undisputed sworn testimony of Lamar's Marty Elrod, he met with MDOT representatives, including Mark McConnell, Chief Engineer of MDOT, Heath Patterson, Chief Maintenance Engineer and Wes Dean, its Chief Permit Official, to discuss the height limitation issue. According to Elrod, the MDOT officials advised him that neither MDOT, nor the Federal Highway Administration cared about sign height. It was suggested by MDOT that the parties jointly draft legislation to be introduced in the 2016 legislative session to eliminate the conflicts in § 49-23-9(2)(b).

Pursuant to these discussions on January 14, 2016, counsel for Lamar forwarded to Heath Patterson, MDOT's State Maintenance Engineer, a proposed revision to the statute. *See Exhibit C (Patterson Depo.) pp. 61-64 and Exhibit 16 thereto.* Patterson discussed the draft with his superiors at MDOT and it was agreed he could submit a counter-proposal. *See Exhibit C (Patterson Depo.) pp. 63, 64.*

On February 3, 2016, Patterson submitted his counter-proposal.  The text of Patterson's draft, like Lamar's, a) eliminated the conflicts in the language in subsection (2)(b) and b) confirmed that signs erected prior to April 15, 2008, but which exceeded forty (40) feet in height could continue as legal and "conforming" signs.  *See Exhibit C (Patterson Depo.) p. 62 and Exhibit 16 thereto*.    Patterson's February 3, 2016 email concluded with "Please keep us posted on the proceedings." *Id.*

Thus, not only has MDOT interpreted § 49-23-9(2)(b) and Rule 1000(1)(b) in the manner which Lamar contends it should be interpreted, it has actively cooperated with Lamar in seeking to have the indisputable ambiguity in § 49-23-9(2)(b) cured by legislative enactment.

## **RELIEF REQUESTED**

This Motion for Partial Summary Judgment brings up for resolution Count I of Lamar's Complaint.  The undisputed facts and law establish that Lamar is entitled to a Judgment of this Court finding and declaring as a matter of law the following:

a)  that § 49-23-9(2)(b) is ambiguous as to its limitations on the height of sign structures;

b)  finding that the intent of the legislature in enacting the 2008 amendments to § 49-23-9(2)(b) was expressed by the provision in that statute which reads:  "The height of any sign structures erected on or after April 15, 2008, shall not exceed forty (40) feet above the level of the road grade . . ." ;

c)  Consistent with that judgment, finding that all signs exceeding forty (40) feet in height and erected before April 15, 2008 shall be considered "conforming signs" as to height;

d)  that MDOT Rule 1000(1)(b) and (c) are ambiguous and in conflict and they should be construed to be consistent with § 49-23-9(2)(b) as construed by this Court, to allow any

sign structure exceeding forty (40) feet in height erected before April 15, 2008 to be

legal and conforming; and

e)   finding that Sign #5821 is a legal conforming sign as to height and that Lamar's

proposed modifications as described by Exhibit A(1) are legal and allowable under §§

49-23-9(2)(b) and Rule 1000(1)(b).

This the 14th day of December 2017.

<div style="margin-left:auto;">

Respectfully Submitted,

THE LAMAR COMPANY

By: */s/ Mark D. Herbert*
    Mark D. Herbert

</div>

Mark D. Herbert (MSB No. 2370)
M. Madison Taylor (MSB No. 103943)
TAYLOR WELLONS POLITZ DUHE, APLC
100 Webster Circle, Suite 104
Madison, MS   39110
Telephone: 769-524-2914
Facsimile:  769-300-2145
mherbert@twpdlaw.com
mtaylor@twpdlaw.com

## **CERTIFICATE OF SERVICE**

I certify that I have this day file the foregoing pleading using the Court's ECF which

notified the following:

  Daniel B. Smith
  MDOT
  P.O. Box 1850
  Jackson, MS 39215-1850
  dsmith@mdot.ms.gov

  Rodney M. Love, Esq.
  MDOT
  Legal Division (69-01)
  P.O. Box 1850
  Jackson, MS 39215-1850
  rlove@mdot.ms.gov

  Ellie Word, Esq.
  eword@mdot.gov

This the 14th day of December 2017.

       */s/ Mark D. Herbert*
       Mark D. Herbert